121-1433 WC Routine Maintenance Appellant by Andrew Fernandez v. Illinois Workers' Compensation Comm'n Richard Muniz-Apperly v. Stephen Cummings Mr. Fernandez, you may proceed. Good afternoon, judges. This who responded to a newspaper advertisement and offered to clean gutters for my client, Routine Maintenance. Now, Routine Maintenance was a marketing company, not a maintenance or construction company. And that is the central issue that gives rise to this appeal, is that the Illinois Workers' Compensation Commission erroneously classified Routine Maintenance as a maintenance company when it is not. Well, isn't it a real issue in the case whether or not the claimant was an employee or an independent contractor? Yeah, yeah, absolutely. So if you assume that Routine Maintenance is a maintenance company, then the employer-employee determination makes sense, right? But if you determine that Routine Maintenance is just a marketing company matching available workers to open job sites, well, then the award of benefits doesn't make sense. Why is that the only controlling factor, what they call themselves? I'm sorry, I don't understand the question, Judge. Well, what's the difference whether they call themselves a marketing company, a contracting company, or whatever? Why does the label define the relationship? Well, the label affects the award of benefits. Well, not the label. No, not the label. The facts. I mean, isn't the issue what did they actually do in relationship to this job where the Yes, absolutely. Well, let's get to it then. Okay, so the record shows evidence of limited control. So the employee, the injured employee worked for this company for a total of three days. He's a laid off bricklayer who responds to a newspaper ad and works for this company for three days. He signs an independent contractor agreement with this company, which the commission again, completely ignores. You say he works for this company, your client? So there is an agreement that he is to operate as an independent contractor for my client. Okay. Let me just interject, you recognize that the fact there's an agreement is not in and of itself controlling. I agree with that. That is the third most important factor to be considered by this court. Factor number one, the most important factor is the element of control. Factor number two is the nature of the business. And then the third most important factor is whether or not there is an independent contractor agreement, which there was in this case. So going straight to the control element, right? There's no evidence in the record. Well, there's limited evidence in the record of control. There's no evidence that the petitioner was given a gutter cleaning manual, given gutter cleaning instructions, given a uniform to wear. There's really nothing other than on this day, on this third day that he was working for the company, he was provided a ride in a white unmarked pickup truck. And he was given a 40 foot ladder that he and Carlos, the company manager rented from a prior to the job. So that's the only evidence in the record indicating any sort of control. Wait a minute. When he got to the job site, are you saying Carlos didn't tell him anything about what to do, where to put the ladder? Nothing like that? Is that what you're saying? So Carlos, the testimony in the record is that Carlos told him which building to work on. Right. And that's it. And that's it. Carlos was not supervising him at all? No. What was he doing then? So the testimony in the record is that Carlos provided transportation to and from the job site for the employees who are working on that day. And he was directing the order that they were to clean the buildings. That's not some form of control? So that's limited control. And our courts make this distinction, as does the restatement that I cited to. It doesn't make an individual an employee just because someone can double check their work. Double checking that the work is performed satisfactorily doesn't rise above the threshold to give control. So for instance, an example of control would be for Carlos to say, I want you to use this tool to clean the gutters. Or I want you to use this hose to clean the then building two, then building three. And I want you to clean the gutters systematically left to right. Right? These are actual indications of control over how the job is done. Whereas in this case, there is no evidence other than Carlos assigned the building for him to work on that there was any control. There wasn't any. Yeah. Can I ask you a question? Did the claimant testify that Carlos said, open up a ladder, go up, climb up the three-story building and begin cleaning the gutters and downstairs? He did. Yes. Okay. And did Carlos also make a determination in which sequence the testimony from the petitioner? And that's not disputed. I don't dispute that. By the virtue of the fact that his assignment was to clean gutters, I mean, he would obviously have to open the ladder and go up. I mean, that's not specifying how to set up a ladder. Would you suggest that if a guy was really an independent contractor, someone would have to tell him to open a ladder and go up it? I mean, you know, this is a logical and self-evident instructions, you know, to say, go up the ladder to clean the gutters. I mean, of course, you have to expect an independent contractor would have to be told to do that. You know, I guess I wouldn't. What they talk about on the job site and how they talk about it, I mean, you know, if Carlos had said, for instance, a judge, start your work. Is that really different than saying, open the ladder and go up? Mr. Fernandez, what's the stated purpose of this, of your client's business? So the purpose of the business is to match available independent contractors to job sites requiring workers. Well, would there have to be any instructions given as to how to do the work? Wouldn't the instruction be to show up at XYZ place? Yeah, and get to work. Yeah, but that's not what happened here. That is not what happened on this third day. So on the first two days, the petitioner went to job sites, houses, and provided his own transportation and provided his own ladder and completed the jobs as he saw fit. On this third day, he was given a ride to the job site by Carlos and they rented a ladder from the hardware store for him to use. Who's the they? Who's the they that rented the ladder? Carlos. Carlos rented the ladder for the petitioner on this third day. And once they got to the job site, allegedly, according to the record, he was instructed to open up the ladder and begin work on building number whatever. But my argument, judges, is that nothing about those instructions indicate actual control. None of it indicates, you know, he was instructed to clean gutters using a specific method or a specific manual or a specific process. He was told to go to building 42 and start the job. You know, that's not actual control. Didn't Carlos remain on the scene? There's also this language about there being a sequence in which the buildings would be completed. That is according to the petitioner's testimony. Yes. Unrebutted? Yes. Yes, because unfortunately, on the day of trial, it was only the petitioner who testified and the company owner, Andy Majernik, who had really no knowledge of what happened on this particular day. So Carlos was not located to call in and testify as to what happened on this day. And that, you know, that's a pretty glaring defect in the trial record, really, because we have the petitioner's testimony about what happened that day and no one else's. But my point is, even given the petitioner's testimony, full weight and full credibility, there's really no indication of control over how the work was done on that day. Well, counsel, let me ask you this. This case is not unusual in the sense, I think, if you look at the evidence fairly and objectively, there's elements of an employee-employee relationship, independent contact relationship. In most of these cases, there's no clear-cut piece of evidence here. So the commission, reviewing the evidence, decided that he was an employee. Correct. So what are we to do with that? How is an opposite conclusion clearly apparent? So an opposite conclusion is clearly apparent because, number one, the commission completely disregarded the independent contractor agreement. That's number one. And number two is the commission completely disregarded. They didn't even comment on the last five factors articulated by our court to consider whether an employer-employment relationship exists. And I'm not saying that these factors would normally be controlling, but the fact that they completely omitted any commentary at all speaks volumes. And if I had to hypothesize, judges, it's because all five of the factors support the conclusion that there was an independent He was free to come and go as he pleased. He was free to reject jobs if he didn't want the jobs. The petitioner wasn't paid hourly. He was paid per job by completion of the job. The company did not withhold income or social security taxes. How did he get paid, by the way? How did the claimant get paid for his work? So there's conflicting testimony as to how he was paid. He said he got a check from routine maintenance, didn't he? He did indicate that he got a check from routine maintenance. That check was never produced into evidence. There is no evidence supporting how he was in fact paid. But according to the petitioner, he was paid per job for completion of the job. And that is more or less confirmed by the testimony of the company owner. Okay. So, I mean, unless you have any further questions, that's basically my argument. There's no element of control here. There's limited control. The fact that he was given a ride to the job site and the fact that he was given a ladder, but he wasn't told how to clean the gutters. Any questions from the court? No? Okay. Mr. Fernandez, you'll have time in reply. Okay. Thank you. Mr. Cummings, you may respond. Thank you, Judge. Good afternoon again. My name is Steve Cummings and I represent the appellee and the petitioner and the underlying workers' compensation claim, Mr. Richard Muniz. And I do have, in that this is a manifest weight threshold, I do have a litany of specific sites on the record that I wanted to go through a little bit. But before I do that, I really do need to address some of the misstatements in both in the brief and in the argument today that are just contrary to what the record actually says. I understand that my the owner of the company, Mr. Majerzyk, was specifically asked on page 943 of the record, what was the nature of his business? And his response, the owner of the company's response in the record at the trial was home services, window washing, gutter cleaning, carpet cleaning, duct cleaning, and power washing. And those were the areas of expertise as he referred to it, actually in the record. I mean, so I don't know where, I understand that late in the game, my opponent is trying to create some information that's really not contained in the record. I understand it would benefit him to label the company, a marketing company, and it would benefit them to label Mr. Muniz an independent contractor. But where versus the industrial commission clearly says that labels the party's place on the relationship is considered but a factor of lesser weight. So trying to cram a square peg into a round hole is not something that they could just do at this stage. He references the agreements, and there's significant evidence about the agreement and the ambiguous nature of the agreements. On page one of the agreements, Mr. Muniz, the petitioner, is listed as the contractor. And on page three of the exact same document, he's listed as the contractee. And Carlos, the foreman and employee of routine maintenance, is listed as the contractor. So on its face, it's completely ambiguous and completely understandable why it wasn't afforded significant, if any, weight at trial by the arbitrator or the commission. In any event, I think we established that the agreement itself would not, of course, be controlling. Certainly. So can we hone in on a key element, as you know, that's the issue of control? Certainly, certainly. Obviously, your opponent has a different take on this thing. Where do you think the control really came in, in this case? Well, basically, Judge, Mr. Muniz was a bricklayer by trade. And during the Christmas holidays, he's looking for some side work to make a little extra money. He testified to that effect. He was hired. If you go through the record, obviously, it's clear that Mr. Majernik has no recollection regarding significant issues on control, where Mr. Muniz has a very good recollection of the specific events and testified to the specific events of the day of his accident. And again, the commission found Mr. Majernik's testimony not credible or reliable. It found Mr. Muniz to be credible. And specifically, he very specifically recalled November 30, 2007. He was hired after answering an ad in the newspaper. He was hired by Carlos. He completed application documents at the behest of Carlos. He signed everything and was told that he would not be allowed to work if he didn't sign the documents, which is evidence of... On the day of the accident, what happened that established control? Okay, certainly. So he was instructed to go to the Glendale Heights office by Carlos to meet there. He was transported to the job site in a company vehicle driven by Carlos. Carlos rented the ladder. There was no they, or it wasn't Carlos and Mr. Muniz renting the ladder. The 40-foot ladder, which was a necessary piece of equipment to do this type of work, was clearly provided by Carlos, the foreman and supervisor, which Mr. Majernik ultimately acknowledges he was his employee and the foreman and the supervisor. Mr. Muniz's unrebutted testimony regarding the day of the accident is that Carlos instructed all sequencing of the cleaning, told him where to go, what to do, and when to do it, and that he had absolutely no control over the course of that day, that he was directed by Carlos to perform the work of cleaning the gutters despite some cold and windy conditions. The sequencing was by Carlos. He specifically said where to go, what to do, what tasks to perform. There was no negotiation in terms of his wages. There was no control whatsoever. Mr. Muniz testified that he had absolutely no control over the means or the methods by which that job was being done. And this is unrebutted testimony. Mr. Majernik had the opportunity to do whatever he wanted to do at trial, and his testimony was, I don't know or contradicted contradictions. Basically, we have some unrebutted testimony from an individual that was deemed credible by the commission, who basically acknowledged that the entire, because it is unskilled labor, obviously there's not going to be a huge tutorial on how to clean a gutter, but he was not in a position to decide what to do, where to go, or how to do it. He was told all of these things by his foreman, his supervisor, Carlos, and his testimony in that when you say he was told what to do. I'm sorry, I missed the first part of the question. What do you mean when you say he was told what to do? From the testimony at trial, it was simple. It wasn't, you know, a laundry list of things to do, but it was, we are going to start with, there's four buildings, or I think it was four buildings. This is the order of the building. You are going to be on this building. You are going to be on this building, and you, third decision to not have a spotter on the ladder, but rather separate the three individuals and have them all go up on their own ladders to do the cleaning. It was Carlos who said, let's start here, despite the windy conditions. It was Carlos that said, here's the buildings. You, Mr. Munoz, go here. You, Mr., whatever the co-worker's name was, go here, and he conducted that. He went back and forth, and he observed and supervised, but he told these guys what to do, and I do understand it is unskilled labor, and there is some limited instruction that would be necessary to clean a gutter, but the reality is, you know, Mr. Munoz could not just say, you know what? I'm not going to do it. I'm going to do something else. I'm going to do the other building. He was told what to do by his supervisor foreman, and he did it, and, you know, and there is case law to suggest that if, in fact, an entity is responsible for safety, they should also have liability, and it was clearly Carlos who felt that the weather conditions were not dangerous enough to postpone or cancel the job that day. He instructed his subordinate to climb up the ladder and do the gutter cleaning, and the result was a windy, dangerous condition resulting in Mr. Munoz's fall, so I do understand it is limited instruction. It's not rocket science by any means, but it is clearly a non-gutter cleaner, non-laborer, a bricklayer who is doing some side work at a company and being instructed completely where to go, where to be picked up, what to do, and the main components of his equipment being the 40-foot ladder was absolutely provided by Carlos and routine maintenance, and my opponent does indicate he feels there's limited evidence of control. I mean, we're talking about a manifest weight standard. To suggest that there's evidence supporting the decision is to suggest that it should not be overturned. He's indicating there's limited control. He's acknowledging that himself, and my contention is there wasn't limited control. There was complete control, but even to take my opponent's argument and say, okay, it was limited, that's not enough to offset the manifest weight Do you contend that the punitive employer controlled the means and methods by which you would clean a gutter? Yes, in that cleaning the gutter is unskilled labor. It doesn't require very specific instruction, but being told which building to go on and which building your co-worker goes on and where to set up the ladders, that is instruction on how to clean these gutters. I understand if you may not have said take your trowel and dig it into the gutter because it is unskilled labor, but the reality is the steps one, two, and three leading up to that were controlled by the foreman. I would say a review of the record, in addition to the significant testimony about control, there was evidence and or testimony that touched upon each of the elements of the test. Obviously, if that evidence is in the record, the commission had the opportunity to review that and weigh that and make determinations. Both parties would agree that control is the most important factor, but to suggest that the commission decided to ignore the other five factors simply because they didn't focus on it in their decision, to me, that's flawed. There was evidence about how it was paid. There was evidence about no income tax being taken out, but the case law clearly says that that is a much lesser consideration. There was evidence about scheduling. He was told where to be and when, so there was plenty of testimony about all six elements of the test. Clearly, the commission focused on control, and clearly that's because, one, it's the most important element, and two, there was significant evidence regarding the control in terms of testimony by Mr. Muniz that was unrebutted. And then the last thing, one thing I want to point out is my opponent indicates that there was conflicting testimony, but that's not really a correct characterization. There was testimony, unrebutted testimony, and there was no testimony contrary to it. That's not conflicting. We have unrebutted testimony, and then another individual saying, I don't recall, I don't know, so we have unrebutted testimony, not conflicting testimony regarding control. And judges, based on this, it's my contention that the commission's decision is clearly not against the manifest way to the evidence. The circuit court was correct in affirming the case, and I would ask this court to do the same and affirm the commission's decision in its entirety. Questions? No. Thank you, Mr. Cummins. Thanks, Judge. Mr. Fernandez, you may reply. Sure. So, you know, the testimony is scarce in the record, so scarce that I cited specifically to the testimony in my brief regarding the element of control. The question asked was, okay, what were you directed to do? And the injured employee says, we were directed to open a ladder, go up, climb up a three-story building, and begin cleaning the gutters and downspouts. The question, so your specific assignment was to climb the ladder and clean out the gutters. Answer, clean out the gutters and downspouts. And that's all we have in the record to indicate any control. You know, Mr. Cummins even gave another example of something that would constitute actual control. If he was given a trowel, if he was told, use the trowel this way, these would be factors that indicate that there was actual control over how he was to do the job. But the record just doesn't have any evidence that there was actual control over how. Well, what you'd have to concede, it's a question of extent. He was given some, quote-unquote, directions by Carlos when he got to the job site. This is different than clean the building and I'll get back to you in four hours. Yeah, it is. But so these factors are addressed and cited in my brief in similar cases where our court has ruled that a supervisor's oversight, checking the final details of the job, that doesn't establish per se that he was controlling how the job was done. Yeah, but that didn't happen here. He wasn't checking any of the results of the work. There's no testimony in the record whatsoever about Carlos controlling the job other than providing transportation to the job and assigning which building the employee would work at. That's it. What's the sequencing of buildings that was brought up? I don't know. There's no language in the record about sequencing of buildings. It's an 1800-page record and I read through the whole thing and there is no language about buildings. Carlos didn't tell him what buildings to start with? So he did assign the petitioner to work on a specific building, yes. That's not in control? No, no. And our courts have held that the assignment of a task to complete on a day is insufficient. And I have case law citations in there to that effect. The process of furnishing a ladder as an accommodation, that has been held by our court as insufficient to establish control. Every factor that they cite, and there's only three, is insufficient to establish actual control. Driving him to the job site by itself is not sufficient. Furnishing a ladder is not sufficient. Telling him to go up and clean the gutters is not sufficient. These are not sufficient to establish actual control over how he does the job. Are you concluding, Mr. Fernandez? Yeah, I mean, you know, without going back into my brief and reading through cases, which you guys can do on your own time, I mean, the case law is there. It really is. There's just no evidence. There's no sufficient evidence to establish that there was any sort of control on the day to impose liability on my client. Very good. Thank you, Mr. Fernandez. Justice Holdredge? Yes. If I may, I just might want to respectfully point out that counsel, without leaving the court, might want to wear a tie and perhaps a jacket when addressing the court. Just a personal preference for myself. I'm glad you pointed that out, Justice Kavanaugh, and it's a very good observation. I'm sorry that I wasn't aware of it. I kind of got the screen cut off a little bit here, but yes, that's totally inappropriate, Mr. Fernandez, for court. Just because we're in a remote world now, our attire as attorneys demands professionalism, and it's not professional the way you appear before a court. So I assume you'll never do that again. So noted. On any Zoom meeting, whether you're representing a client in a conference, I think we have to uphold our professionalism and appearance. Well, thank you, counsel, though, for your arguments in this matter this afternoon.